UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LUIS E. RODRIGUEZ,

                Plaintiff,

v.

                **DECISION AND ORDER**
                12-CV-142S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

1. Plaintiff, Luis Rodriguez, challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Rodriguez alleges that he has been disabled since June 5, 2009. Specifically, he alleges that the effects of major depressive disorder ("MDD"), post-traumatic stress disorder ("PTSD"), fibromyalgia, and neuropathy render him unable to work. He therefore asserts that he is entitled to benefits under the Act.

2. Rodriguez filed an application for disability and supplemental security benefits under Title II of the Act on September 3, 2008. The Commissioner of Social Security ("Commissioner") denied his application, and as result, he requested an administrative hearing. He received that hearing before ALJ Marilyn Zahm on March 3, 2011. The ALJ considered the case *de novo*, and on March 23, 2011, she issued a decision denying Rodriguez's application for benefits. Rodriguez filed a request for review with the Appeals Council, but the Council denied that request, prompting him to file the current civil action on February 16, 2012, challenging Defendant's final decision.[1]

---

[1] The ALJ's March 23, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

3. On July 30, 2012, the Commissioner filed a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. Rodriguez followed suit on November 28, 2012. Briefing on the motions concluded January 2, 2013, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is granted and Rodriguez's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.  The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.  This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520. The claimant has the burden of proof as to the first four steps, but the Commissioner has the burden of proof on

the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).

8. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Rodriguez has not engaged in substantial gainful activity since his alleged onset date (R. 21);[2] (2) he suffers from four severe impairments, including MDD, PTSD, fibromyalgia, and neuropathy (id.); (3) he does not have an impairment or combination of impairments that meets or medically equals the criteria necessary for finding a disabling impairment under the regulations (id.); (4) he has the residual functional capacity ("RFC") to perform "light work," with the modification that he avoid extended contact with others (id., 22); and (5) there are jobs in the national economy that Rodriguez can perform (id., 29). Ultimately, the ALJ concluded that Rodriguez was not under a disability as defined by the Act from his onset date through the date of her decision. (Id., 30–31.)

9. Rodriguez raises two challenges to the ALJ's decision: First, he argues that the ALJ did not properly consider the opinion of his treating psychiatrists. Second, he contends that the ALJ failed to properly evaluate his credibility. Each argument is discussed, and rejected, below.

10. Under the "treating physician's rule,"[3] the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[2] Citations to the underlying administrative record are designated "R."

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

4

substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 335 F.3d 99 (2d Cir. 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

11. Rodriguez points to the opinions of Dr. Ramon O. Martinez, who, in April of 2009 diagnosed Rodriguez with MDD and assigned him a Global Assessment Functioning ("GAF") score of 50, and Dr. Alfonso Tan, who treated Rodriguez on a monthly basis and who diagnosed him with PSTD.[4] Dr. Martinez, in particular, found Rodriguez unable to work. (R. 422.) As such, Rodriguez argues that the ALJ should have adopted these opinions under the treating physician's rule and concluded that his psychiatric ailments precluded gainful activity.

12. The ALJ, however, committed no error in declining to adopt these opinions. Contrary to Rodriguez's argument that ALJ Zahm "fail[ed] to evaluate the opinion[s] of the claimant's treating specialists[,] Drs. Martinez and Tan" (Pl.'s Br. At 12; Docket No. 17-1), ALJ Zahm fully explained her rationale for according them little weight:

> I give little weight to Dr. Martinez's June 2009 report that the claimant is permanently incapable of work because this evaluation was rendered at a time when the claimant's condition was the worst, and it is not borne out by later treatment notes. Dr. Martinez's own treatment notes in July and August 2009 reflect an improvement in the claimant's condition. Dr. Tan, who has treated the claimant in 2010 and 2011, assigned him a GAF of 60 for almost all of that period, reflecting that, in his opinion, the claimant's symptoms are mild.

---

[4] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" Kohler v. Astrue, 546 F.3d 260, 262 n. 1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV"), at 32 (4th ed. 2000)). Category "41–50" indicates "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." DSM–IV-TR, at 34.

5

(R. 29.)

13. Whether an individual is "disabled" under the Act is not a medical issue but is an administrative finding. See SSR 96-5P, 1996 WL 374183, at *2 (S.S.A. 1996). The final determination, is, in other words, the ALJ's prerogative. Indeed, "[t]reating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." Id. While the treating physicians' opinions on this matter should not be disregarded, there is no indication that they were. Instead, ALJ Zahm considered these opinions—according them "little weight"—in conjunction with the collective evidence and the progress Rodriguez demonstrated in later visits with his physicians. ALJ Zahm made a well reasoned determination that Rodriguez was not disabled – a decision which she was free and required to make under the Act as the presiding judge. See Taylor v. Barnhart, 83 Fed. App'x 347, 349 (2d Cir. 2003) (summary order) (treating physician's belief that a plaintiff is "totally disabled" is not entitled to any weight since that determination is reserved for the Commissioner).

14. Furthermore, aside from Dr. Martinez's determination that Rodriguez is disabled, Rodriguez appears to place a great deal of emphasis on his GAF score as assigned by Drs. Martinez and Tan. Though his argument is not explicit or entirely clear, he appears to argue that this score should result in a finding of disabled. But this Court, like its sister court in Vermont, "is aware of no [authority] holding that a GAF score—in and of itself—demonstrates that an impairment significantly interferes with a claimant's ability to work." Parker v. Comm'r of Soc. Sec. Admin., No. 2:10-CV-195, 2011 WL 1838981, at * 6 (D. Vt. May 13, 2011); see also Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 511 (6th Cir. 2006) ("[W]e are not aware of any statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score."). Considered instead as one factor among many, it

6

still fails to buttress his claim. As noted by the ALJ, Rodriguez's GAF was most frequently rated at 60 (R. 594–609), which is at the high-end of a range that indicates only "moderate symptoms" or "moderate difficult[ies]" in occupational, social, or school settings. DSM–IV–TR at 34. One point higher would put in him at the low-end of a range where the claimant would be doing "pretty well." Id. This further supports the ALJ's determination that Rodriguez had recovered from his nadir of psychological functioning in the middle of 2009.

15. Finally, the ALJ properly accounted for these difficulties in assessing Rodriguez's RFC. She found that he has the capacity to perform simple, routine work, and, accounting for his social difficulties as reflected in his GAF score, she found that he could have only occasional contact with others. Then, upon questioning by the ALJ under a hypothetical that took into account these limitations, the vocational expert testified that various jobs exist in the national economy that claimant could perform. Accordingly, this Court finds no error in the ALJ's assessment that Rodriguez is not disabled.

16. In making this determination, the ALJ also found Rodriguez to be less than entirely credible. This Court finds no error in that determination. When considering a plaintiff's symptoms, the ALJ must follow a two-step process. First, she must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the plaintiff's pain or other symptoms. SSR 96-7p. Second, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which they limit the plaintiff's functioning. Id. In making that evaluation, an ALJ must assess a plaintiff's credibility when such statements cannot be verified by objective medical evidence. Id.

The ALJ alone decides issues of credibility and this Court must give great deference to those decisions, as the ALJ was able to observe the witness's testimony and demeanor

at the hearing. Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995); Serra v. Sullivan, 762 F. Supp. 1030, 1034 (W.D.N.Y. 1991).

17. Contrary to Rodriguez's argument that the ALJ provided "little if any basis for h[er] finding" (Pl.'s Br. at 14), the ALJ adequately explained her reasoning, finding that his complaints of pain were out of proportion to the treatment notes and medical reports in the record. (R. 28.) She went on to explain:

> Further, the claimant was not a reliable witness. His complaints are not reflected in the treatment notes to the extent alleged and his testimony was inconsistent on several points. His presentation to the consultative examiners reflects his attempts to appear more limited than he actually is. The claimant has not received any significant treatment for alleged back and leg pain. The pain is generally described as mild in the treatment notes. While on occasion the claimant's diabetes mellitus is not well controlled, it appears that the reason is that he does not take medication consistently; if he were having the problems he testified to, he would take his medications regularly.

(R. 28.)

Aside from general, garden-variety arguments that ALJ Zahm did not properly evaluate his credibility, Rodriguez's only specific complaint is lodged against the ALJ's assessment that he did not take his medication regularly. (See Pl.'s Br. at 14.) But this determination is supported by substantial evidence. Consultive examiner Dr. Nikita Dave's examination notes reflect that Rodriguez himself admitted that his medications had been depleted two months before his examination. (R. 471.) What is more, progress notes from Dr. Vasquez at Urban Family Practice on January 6, 2010 reveal that Rodriguez's diabetes and hypertension were poorly controlled at that time because he was "not taking [his] prescribed medication." (R. 543.) This flatly controverts Rodriguez's argument that "the medical evidence of record does not recite issues of non-compliance with suggested medical treatment." (Pl.'s Br. at 14.)

18. In sum, it is clear that the ALJ committed no reversible error and her findings are based on substantial evidence. This Court will therefore grant Defendant's motion for judgment on the pleadings, and deny Plaintiff's motion for the same relief.

****

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: February_23, 2012
       Buffalo, New York

                              /s/William M. Skretny
                            WILLIAM M. SKRETNY
                                  Chief Judge
                            United States District Court